UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TONI DENISE BERRYHILL,

        Plaintiff,        Civil Action No.: 15-14029
                                 Honorable Marianne O. Battani
        v.                 Magistrate Judge Elizabeth A. Stafford

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [R. 14, 16]

Plaintiff Toni Denise Berryhill appeals a final decision of Defendant Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions, referred to this Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). After review of the record and a hearing on April 10, 2014, the Court finds that the administrative law judge's ("ALJ") decision is not supported by substantial evidence, and thus **RECOMMENDS** that:

- Berryhill's motion **[R. 14]** be **GRANTED**;

- Commissioner's motion **[R. 16]** be **DENIED**; and,

- the Commissioner's decision be **REMANDED** for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

## I. BACKGROUND

### A. Claimant's Background and Claimed Disabilities

Born January 31, 1967, Berryhill was 44 years old when she submitted her applications for disability benefits in December 2012. She alleges that she is disabled by degenerative disc disease, neuropathy in feet and legs, thyroid, high blood pressure, and high cholesterol, with an onset date of June 29, 2012. [R. 11-2, Tr. 10; R. 11-6, Tr. 213].

After the Commissioner denied both disability applications initially, Berryhill requested a hearing, which took place on April 10, 2014, and included the testimony of Berryhill and a vocational expert ("VE"). [R. 11-2, Tr. 28-63]. In a July 10, 2014, written decision, the ALJ found Berryhill not disabled.[1] [*Id.*, Tr. 7-27]. The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Berryhill timely

---

[1] A prior ALJ found in June 2011 that Berryhill had a residual functional capacity (RFC) for unskilled, sedentary work with a sit-stand option, which allowed her to perform a significant number of jobs. The instant ALJ found that new and material evidence had been submitted such that he was not bound by the prior RFC. [R. 11-2, Tr. 10].

2

filed for judicial review. [*Id.*, Tr. 5-6; R. 1].

**B.     The ALJ's Application of the Disability Framework**

DIB and SSI are available for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[2] Second, if the claimant has not had a severe impairment or a combination of such impairments[3] for a continuous period of at least 12 months, no disability will be found. *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the

---

[2] Sections 1520(a)(4) and 920(a)(4), which pertain to DIB and SSI respectively, list the same five-step analysis.
[3] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 1520(c); 920(c).

3

claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity ("RFC"), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Berryhill was not disabled. At step one, he determined that she had not engaged in substantial gainful activity between her alleged onset date of June 29, 2012, and her date last insured, December 31, 2012. [R. 11-2, Tr. 12]. At step two he identified the severe impairments of degenerative disc disease and spondylosis of the spine, neuralgia/neuritis, obesity, history of closed head injury, degenerative joint disease of the hands, chronic obstructive pulmonary disease, bronchitis, hypothyroidism, high cholesterol, and hypertension. [*Id.,* Tr. 13]. At step three, the ALJ concluded that none of Berryhill's impairments, either alone or in combination, met or medically equaled a listed impairment. [*Id.,* Tr. 13-14].

4

Between the third and fourth steps, the ALJ found that Berryhill had the RFC:

> to perform sedentary work as defined in 20 CFR 404.1567(a), as the claimant may lift no more than five pounds, sit for up to six hours in an eight-hour workday, and stand/walk for up to two hours in an eight-hour workday. The claimant, however, requires a sit-stand option, as the claimant is limited to sitting for up to 20 minutes at a time and standing for up to 10 minutes at a time, with the ability to alternate positions at least twice per hour. The claimant should never use foot controls bilaterally, crawl, or climb ladders, scaffolds, or ropes. The claimant may occasionally climb ramps or stairs, balance, stoop, kneel, or crouch. The claimant is limited to frequent handling, fingering, reaching, and pushing/pulling. The claimant should have no exposure to temperature extremes, and should avoid concentrated exposure to vibration and hazards, such as moving machinery and unprotected heights. The claimant should avoid concentrated exposure to fumes, dusts, odors, gases, and poorly ventilated areas. The claims needs to elevate the right leg approximately 12 inches while sitting. Due to complaints of pain and fatigue, the claimant is limited to simple, routine, and repetitive tasks in an environment free from fast-paced production requirements, involving only simple work-related decisions, with few, if any, workplace changes. The claimant would also be off task approximately 8% of the workday, being approximately five minutes per hour, not including regular breaks.

[R. 11-2, Tr. 15-16]. At step four, the ALJ found that Berryhill could not perform past relevant work. [*Id.*, Tr. 21]. With the assistance of VE testimony [*Id.*, Tr. 22], the ALJ determined at step five that based on Berryhill's age, education, work experience and RFC, she could perform work as a sorter/inspector, assembler, and order clerk, and that those jobs

5

existed in significant numbers in the economy, rendering a finding that she was not disabled. [*Id.*, Tr. 21].

## II. STANDARD OF REVIEW

Pursuant to § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made in conformity with proper legal standards. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to governing standards. "Chief among these is the rule that the ALJ must consider all evidence in the record when making a determination, including all objective medical evidence, medical signs, and laboratory findings." *Gentry*, 741 F.3d at 723. *See also Rogers*, 486 F.3d at 249. In other words, substantial evidence cannot be based

6

upon fragments of the evidence, and "must take into account whatever in the record fairly detracts from its weight." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (internal quotation marks and citation omitted).

The Commissioner must also adhere to its own procedures, but failure to do so constitutes only harmless error unless the claimant has been prejudiced or deprived of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). An ALJ's failure to use an "adjudicatory tool" that does not change the outcome of the decision is harmless. *Id.* at 655-56. On the other hand, substantial errors like ignoring evidence in the record or failing to follow the treating physician rule are not harmless. *Id.*; *Gentry*, 741 F.3d at 723, 729; *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011).

Berryhill argues that the ALJ violated the treating physician rule with respect to the opinion of Irina Burman, M.D., Berryhill's treating internist.[4] The Court agrees.

### III.   ANALYSIS

### A.

Dr. Burman had treated Berryhill since at least 2009 for chronic low

---

[4] The Commissioner's motion for summary judgment analyzes the ALJ's treatment of other physicians' opinions, but Berryhill's motion only took issue with the consideration given Dr. Burman's opinion.

back pain and other ailments. [R. 11-7, Tr. 450-51, 459-60]. In September 2011, Berryhill saw Dr. Burman for complaints of numbness and tingling in her toes, and back pain. [*Id.,* Tr. 435]. The back pain was described as being eight out of ten in intensity, but it was reasonably controlled on her current medication. [*Id.*]. Dr. Burman believed that Berryhill was developing neuropathy, and referred her to Luke Kim, M.D. for an EMG study. [*Id.*]. Dr. Kim conducted nerve conduction velocity studies later than month, which were unremarkable, but Berryhill declined the EMG because she had a phobia of needles. [*Id.*, Tr. 438]. From his clinical examination of Berryhill, Dr. Kim found that she had a limited range of motion of the lumbosacral spine, evidence of bilateral pelvic torsion, exquisite tenderness over the sacroiliac joints, myofascial tightness and trigger points, and that these findings could explain some of her chronic back pain and leg numbness. [*Id.*]. Dr. Kim reported these findings to Dr. Burman. [*Id.*].

   Berryhill continued to complain about pain and numbness in her lower extremities when she saw Dr. Burman in May 2012, and Dr. Burman continued to diagnose Berryhill with peripheral neuropathy despite the lack of an EMG study. [R. 11-7, Tr. 436]. Dr. Burman described Berryhill's symptoms as being worse with walking, but still present during rest. [*Id.*]. Berryhill was prescribed Neurontin and was instructed to slowly increase

her dosage. [*Id.*]. Dr. Burman continued increasing Berryhill's dosage of Neurontin in August 2012, and prescribed Norco because her back pain was getting worse and Ultram was no longer working. [*Id.*, Tr. 434]. By the end of August 2012, Berryhill reported to Dr. Burman that she responded well to the change in pain medication, but that she wanted to again increase the dosage of Neurontin. [*Id.*, Tr. 433].

In November 2012, Berryhill complained to Dr. Burman of fluctuating but persistent pain in her middle and lower back that radiated to both feet. [*Id.*, Tr. 303]. Berryhill described the pain as being eight out of ten in intensity, deep and dull; as being aggravated by bending, flexion and lifting; and as being constant but relieved by medication and rest. [*Id.*, Tr. 303, 305]. Berryhill's lumbar spine had tenderness, but she had a normal gait. [*Id.*, Tr. 305]. Her medications were continued. [*Id.*, Tr. 303]. The following day, after being referred by Dr. Burman, Berryhill underwent electrodiagnostic testing in both her legs, with "no evidence, no neuropathy or radiculopathy" being found. [*Id.*, Tr. 275-77].

After a December 3, 3012, appointment, Dr. Burman reported that Berryhill experienced moderate and constant symptoms in her feet and lower back, and that the "neuropathy like pain" was worsening in both feet. [*Id.*, Tr. 307-309]. Dr. Burman referred Berryhill to physical medicine and

9

rehabilitation doctor Jon M. Wardner, M.D., who ordered an MRI of the spine. [*Id.*, Tr. 307, 312, 317]. The December 27, 2012, MRI revealed "[m]ild discogenic degenerative changes . . . within lumbar vertebral column"; "[m]ild-moderate diffuse posterior and more focal left posterolateral disc bulge at L4-L5 combine[d] with subluxation deformity and facet hypertrophy [resulting] in mild/moderate central canal stenosis and thecal sac compression"; "minimal/mild spondylosis at other lumbar intervertegral disc space/levels" that combined with the facet hypertrophy "to result in mild/mild-moderate central canal stenosis and thecal sac compression"; and "[m]oderate lumbar facet hypertrophy/arthropathy contribut[ing] to neural foraminal stenosis." [*Id.*, Tr. 312, 316].

The following month, when Berryhill returned to Dr. Wardner complaining of back pain, the doctor noted that Berryhill was not interested in physical therapy or injection because they failed to previously improve her symptoms. [*Id.*, Tr. 316-17]. He stated that a consult with a spinal surgeon was an option but that it was unclear whether Berryhill's MRI findings were severe enough to warrant surgery. [*Id.*, Tr. 317].

Berryhill continued to see Dr. Burman after the December 31, 2012, date of last insured. [*Id.*, Tr. 333-337, 466, 475]. In May 2013, Berryhill was injured in a car accident and was treated by Jeffrey H. Soffa, D.O.

10

through July 2013.  [R. 11-7, Tr. 473-74, 478-79, 483-84].  She reported a worsening of her chronic back pain and neuropathy in her legs and feet, and Dr. Soffa's examinations revealed spasms and tenderness with decreased ranges of motions throughout the paraspinal muscles and cervical, thoracic and lumbosacral spine, and a positive straight leg raising test bilaterally.  [*Id.*, Tr. 473-74; 478].

    The ALJ had before him four relevant medical opinions to consider.  In December 2012, Dr. Burman offered a medical opinion in regard to Berryhill's ability to do physical work-related activities.  She opined that Berryhill could lift and/or carry less than ten pounds; could stand and/or walk less than two hours in an eight-hour workday; could sit for less than six hours in an eight-hour workday; could only occasionally push, pull, reach or handle with her upper extremities; could not climb, balance, crawl, or stoop; could kneel and crouch occasionally; and was limited in her ability to work in extreme temperatures, vibration or hazards.  [*Id.*, Tr. 462-465].  Her notes indicated that Berryhill suffered from chronic low back pain (treated with opioids) and neuropathic type pain in her feet, bilaterally.  [*Id.*].  Her March 2014 opinion rendered nearly identical findings as in the earlier 2012 opinion.  [*Id.,* Tr. 505-08].

    In March 2013, a state agency medical consultant, Robin Mika, D.O.,

opined that Berryhill was limited to sedentary work with a sit-stand option and only occasional use of her lower extremities for foot controls. [R. 11-3, Tr. 132-33]. She opined that Berryhill could occasionally climb, balance, stoop, kneel, crouch and crawl. [*Id.*].

After Berryhill's motor vehicle accident in May 2013, Dr. Soffa opined that Berryhill would be restricted in performing daily activities and that she would need a personal care attendant until August 2013. [*Id.*, Tr. 484]. In September 2013, Dr. Soffa determined that Berryhill would still not be able to perform household chores until September 21, 2013, but no longer needed attendant care. [*Id.,* Tr. 485]. Notably, Dr. Soffa did not examine Berryhill after September 2013.

## B.

The "treating physician rule" requires an ALJ to give controlling weight to a treating physician's opinions regarding the nature and severity of a claimant's condition when those opinions are well-supported by medically acceptable clinical and diagnostic evidence, and not inconsistent with other substantial evidence. *Gentry*, 741 F.3d at 723, 727-29; *Rogers*, 486 F.3d at 242-43. "Even when not controlling, however, the ALJ must consider certain factors, including the length, frequency, nature, and extent of the treatment relationship; the supportability of the physician's

conclusions; the specialization of the physician; and any other relevant factors," and give appropriate weight to the opinion. *Gentry*, 741 F.3d at 723. In all cases, a treating physician's opinion is entitled to great deference. *Id.*

An ALJ who decides to give less than controlling weight to a treating physician's opinion must give "good reasons" for doing so, in order to "make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Rogers*, 486 F.3d at 242 (quoting SSR 96-2p, 1996 WL 374188, at *5 (1996)). This procedural safeguard not only permits "meaningful appellate review," but also ensures that claimants "understand the disposition of their cases." *Rogers*, 486 F.2d at 242-43 (internal quotation marks and citation omitted). The Court will "not hesitate to remand" when an ALJ's opinion "do[es] not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion." *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011) (internal quotation marks and citation omitted).

The ALJ's reasoning for his treatment of Dr. Burman's opinion suffers from a lack of clarity, and he impermissibly substituted his judgment for that of the treating physician. When considering Dr. Burman's opinions, the ALJ acknowledged "the long-established treating relationship with the

13

claimant, and that such opinion is not wholly inconsistent with the record." [R.11-2, Tr. 20]. Still, the ALJ found that the record did not appear to support Dr. Burman's assessment of extensive limitations, "particularly noting limited diagnostic evidence and the lack of indication that the claimant requires more intensive, surgical, or emergent treatment for any condition." [*Id.*]. The ALJ concluded, "As such, highly limited to the extent consistent with the findings as stated in this decision, the undersigned has assigned only some weight to the opinion of Dr. Burman." [*Id.*]. The meaning of this latter statement is confusing and unclear, undermining meaningful review.

With respect to the ALJ's reasoning that the diagnostic evidence did not support Dr. Burman's assessed limitations, it is well established that an ALJ may not "substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence." *Meece v. Barnhart*, 192 Fed. Appx. 456, 465 (6th Cir. 2006). "While an ALJ is free to resolve issues of credibility as to lay testimony, or to choose between properly submitted medical opinions, the ALJ cannot substitute his own lay 'medical' opinion for that of a treating or examining doctor." *Smiley v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 592, 600 (S.D. Ohio 2013) (citation, internal quotation marks and brackets

14

omitted). And the caution that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings," *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. Appx. 181, 194 (6th Cir. 2009), applies when an ALJ is assessing a claimant's RFC. (Citation and internal quotation marks omitted). Courts have "cautioned ALJs against relying on their own expertise in drawing RFC conclusions from raw medical data." *Allen v. Comm'r of Soc. Sec.*, No. 12–15097, 2013 WL 5676254 at *15 (E.D. Mich. Sept. 13, 2013) adopted by 2013 WL 5676251 (E.D. Mich. Oct. 18, 2013) (collecting cases).

This is the precise error that the ALJ committed in giving limited weight to Dr. Burman's RFC; he relied upon his own "expertise" to draw conclusions from raw medical data, including that from clinical examinations and an MRI, and substituted his medical judgment for that of Dr. Burman's.

The Commissioner cites opinions finding that conservative treatment is inconsistent with disabling limitations and argues that the mild and moderate conditions shown by the December 2012 lumbar MRI results are "in sharp contrast" with the "extreme limitations" assessed by Dr. Burman. [R.16, PgID 595-96]. But the opinions the Commission cites also relied upon other evidence, including that the claimant's diagnostic testing

15

established normal findings or that the treating doctor did not place limitations on the claimant. *See Dimarzio v. Comm'r of Soc. Sec.*, No. 11-15635, 2013 WL 6163637, at *7 (E.D. Mich. Nov. 20, 2013) (claimant's MRI showed no stenoses or nerve root compression and ALJ's findings were in accord with opinions of treating physician); *Byberg v. Comm'r of Soc. Sec.*, No. 12-10158, 2013 WL 1278397, at *3, *15 (E.D. Mich. Mar. 11, 2013) ("The ALJ also noted that these doctors found plaintiff's impairments to be mild, that objective tests showed limited and/or no abnormalities, and that these doctors noted plaintiff's condition was improving."); *Runk v. Comm'r of Soc. Sec.*, No. 09-12893, 2010 WL 3905241, at *3 (E.D. Mich. Sept. 30, 2010) ("Dr. Pierce did not place Runk on work restrictions or impose similar limitations at any time during the relevant insured period.") These opinions do not establish that the nature of the treatment, alone, constitutes good cause for limiting the weight given to a treating physician. And in contrast to the opinions cited by the Commissioner, Berryhill's MRI scans showed abnormalities of varying severity, and Dr. Burman opined that Berryhill should be placed on limitations. [R. 11-7, Tr. 316, Tr. 324-329, 462-465, 505-508].

The Commissioner characterizes the MRI results as not being consistent with extreme limitations, but the results are not so simplistic so

as be susceptible to such lay analysis. Neither the ALJ nor this Court have the medical expertise to assess the limitations necessary to account for the combination of Berryhill's discogenic degenerative changes, disc bulge, subluxation deformity, facet hypertrophy, central canal stenosis, thecal sac compression, spondylosis, arthropathy and neural foraminal stenosis, regardless of the fact that each individual finding was described only as mild or moderate.

Of further note, Dr. Burman's opinion that Berryhill needed significant limitations is consistent with that of Dr. Soffa, who found that Berryhill was unable to perform household chores through at least September 2013; Berryhill did not see Dr. Soffa after that date. [R. 11-7, Tr. 485]. And while Dr. Mika's opinion regarding Berryhill's RFC was not as restrictive as Dr. Burman's, the opinion of a treating physician is entitled to more weight than that of a one-time examiner, *Blinder v. Comm'r of Soc. Sec.*, No. CV 15-10351, 2016 WL 6208307, at *3 (E.D. Mich. Mar. 15, 2016), and the ALJ agreed that Dr. Mika's RFC was insufficient and gave it only some weight. [R. 11-2, Tr. 21].

The Court acknowledges that the ALJ's assessment of Berryhill's RFC included significant restrictions. Nonetheless, his findings that Berryhill could occasionally climb ramps, balance and stoop, and that she

could frequently handle, finger, reach, push and pull, were derived from his own interpretation of raw medical evidence that was contrary to the opinion of Berryhill's treating physician. The ALJ's lay opinion of the medical evidence is not a good reason for discounting Dr. Burman's opinion regarding Berryhill's RFC, and remand for further proceedings is warranted.

## IV. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Berryhill's Motion for Summary Judgment **[R.14]** be **GRANTED**, the Commissioner's Motion for Summary Judgment **[R.16]** be **DENIED** and this case be **REMANDED** for further proceedings consistent with this report and recommendation.

s/Elizabeth A. Stafford<br>
ELIZABETH A. STAFFORD<br>
United States Magistrate Judge

Dated: January 6, 2017

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any

further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 6, 2017.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager